DECISION AND JUDGMENT ENTRY
{¶ 1} Randy Detillion ("Detillion") appeals the decision of the Ross County Court of Common Pleas granting summary judgment to Lumbermens Mutual Casualty Company ("Lumbermens") and Pacific Employers Insurance Company ("Pacific"). Detillion contends that he is entitled to underinsured motorist coverage under the terms of the various insurance policies issued by Lumbermens and Pacific to his employer, Thomson Consumer Electronics, pursuant to the Ohio Supreme Court's decision in Scott-Pontzer v. LibertyMut. Ins. Co. (1999), 85 Ohio St.3d 660. Because we find that Illinois or Indiana law is applicable here, and neither jurisdiction has recognized the Ohio Supreme Court's holding inScott-Pontzer, we disagree. Additionally, we find that even if we were to apply Ohio law, Detillion could not prevail due to the Ohio Supreme Court's recent decision in Westfield Ins. Co. v.Galatis (2003), 100 Ohio St.3d 216, 2003-Ohio-5849. Accordingly, we affirm the decision of the trial court.
 I. {¶ 2} On August 24, 1999, Detillion was a passenger in an automobile, driven by Rebecca Stauffer ("Stauffer"), when it was struck by another vehicle, driven by Angel Morrison ("Tortfeasor"). The accident occurred in Chillicothe, Ross County, Ohio. Detillion alleges that he sustained bodily injuries as a result of the accident. At the time of the accident, Detillion was an employee of Thomson Consumer Electronics ("Thomson"), although he admits that he was not acting in the scope of employment at the time of the accident.
 {¶ 3} Detillion received the full policy limit of $12,500.00 from the Tortfeasor's insurer in settlement of his claims against her. Detillion then filed suit against State Farm Mutual Automobile Insurance Company ("State Farm"), Stauffer's insurer, and John Doe, who Detillion believed to be an insurance company issuing policies of motor vehicle insurance to Thomson, his employer at the time of the accident. Detillion later amended the complaint to identify Pacific and Lumbermens as the previously unknown John Doe Defendants.
 {¶ 4} Thomson was the named insured under three separate insurance policies, to wit: a business auto policy ("business auto policy") and commercial general liability policy ("CGL") issued by Pacific; and, a commercial umbrella policy ("umbrella policy") issued by Lumbermens. Detillion argues that these policies are motor vehicle policies within the meaning of former R.C. 3937.18, and, because there is no written rejection of such coverage by his employer, uninsured/underinsured motorist coverage ("UM/UIM coverage") arose as a matter of law.
 {¶ 5} After filing their answers in response to Detillion's complaint, both Pacific and Lumbermens filed motions for summary judgment alleging that Ohio law did not apply to the interpretation of the various insurance policies.
 {¶ 6} With regard to the business auto policy, Pacific also advanced arguments that: 1) Detillion's settlement and release with the Tortfeasor breached the policy conditions; 2) the policy only covered employees acting in the scope of their employment; 3) the "drive other car" endorsement precluded coverage; 4) Detillion was not occupying a covered auto at the time of the accident; and, 5) any claim Detillion might have was subject to a $250,000.00 deductible.
 {¶ 7} Pacific further argued that there was no UM/UIM coverage under the CGL policy because: 1) it was not a motor vehicle policy pursuant to former R.C. 3937.18; 2) the policy provided coverage for specific types of employees in specific circumstances, and, therefore, did not present any ambiguity with regard to who was an insured; and, 3) the policy was self-insuring in nature, such that former R.C. 3937.18 did not apply.
 {¶ 8} In addition to the argument that Ohio law did not apply, Lumbermens advanced arguments that: 1) the umbrella policy it issued to Thomson was not applicable to Detillion because the terms of the policy require exhaustion of the underlying insurance policies before any coverage is available; 2) Detillion did not qualify as an insured under the Lumbermens umbrella policy, in that the policy specifically defined "who is an insured" to include employees acting in the scope of employment while performing duties related to the conduct of business; 3) the arguments advanced in Pacific's motion for summary judgment with regard to lack of coverage pursuant to the underlying policies were equally applicable to the umbrella policy.
 {¶ 9} The trial court granted summary judgment in favor of Pacific and Lumbermens, finding they were entitled to judgment as a matter of law because negotiation and performance of the insurance policies occurred in either Indiana or Illinois, but not Ohio, and therefore, Ohio law did not govern the dispute. In doing so, the trial court noted that the business auto policy did not provide uninsured motorist coverage in Ohio, nor did it reference any vehicles in Ohio. Therefore, the trial court inferred that the parties to the contract anticipated that the principle risk would not occur in Ohio. Because the trial court concluded Ohio law did not govern the dispute, and Detillion advanced no legal basis for recovery under the business auto policy other than Scott-Pontzer, a unique creature of Ohio law, the trial court concluded that Detillion did not meet the definition of an insured under the Pacific business auto policy.
 {¶ 10} With regard to the Pacific CGL policy, the trial court concluded that the policy's coverage for "[p]arking an auto on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured," provided only incidental automobile liability coverage. Therefore, the trial court determined that the CGL policy is not an automobile or motor vehicle liability policy such that the insurer was required to provide UM/UIM coverage. Additionally, the trial court found that the CGL policy defined an insured to include employees only for acts within the scope of their employment or while performing duties related to the conduct of the business. Because Detillion admitted he was not acting in the scope of his employment at the time of the accident, the trial court concluded that Detillion was not an insured under the policy.
 {¶ 11} Finally, with regard to the Lumbermens umbrella policy, the trial court found that the parties did not dispute that the policy provided only excess coverage to the underlying policies issued by Pacific. Having determined that Detillion was not an insured entitled to recover from the underlying policies, the trial court concluded that Detillion could not recover from Lumbermens under the umbrella policy. The trial court also noted that even if the umbrella policy did provide primary coverage, Detillion did not qualify as an insured pursuant to the terms of the policy.
 {¶ 12} Detillion filed a timely notice of appeal raising the following assignments of error: "I. The trial court erred in granting Pacific's motion for summary judgment;" and "II. The trial court erred in granting Lumbermens' motion for summary judgment." In its brief, Lumbermens raises the following cross-assignment of error: "Appellant Randy Detillion is not entitled to coverage under the Lumbermens commercial umbrella policy since he failed to satisfy the policy's preconditions to coverage."[3]
 II. {¶ 13} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56. SeeBostic v. Connor (1988), 37 Ohio St.3d 144, 146; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead v.Conley, 75 Ohio App.3d at 411-12. See, also, Schwartz v. BankOne, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 {¶ 14} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988) 38 Ohio St.3d 112, 115. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist." Morehead v. Conley,75 Ohio App.3d at 413.
 {¶ 15} We interpret insurance contracts using the identical standards of interpretation we apply to other written contracts.Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665. We must give the language of an insurance policy its plain and ordinary meaning. Jirousek v. PrudentialIns. Co. (1971), 27 Ohio St.2d 62, 64. When we decide whether a claimant is an insured under a policy, we construe any ambiguities in the policy language in favor of the policyholder, not the claimant. Galatis at ¶ 35.
 {¶ 16} In both of his assignments of error, Detillion argues that the trial court erred in finding that Ohio law did not govern the dispute. Because Detillion's two assignments of error are interrelated, we address them together.
 {¶ 17} In determining that Ohio law did not apply to Detillion's claims, the trial court relied upon the Ohio Supreme Court's decision in Ohayon v. Safeco Ins. Co. of Illinois
(2001), 91 Ohio St.3d 474. In Ohayon, the Court held that the extent of the parties' rights and duties under an insurance contract's uninsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d., Conflict of Laws (1971). Id. at paragraph two of the syllabus.
 {¶ 18} Section 187 of the Restatement of Conflicts provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties. Further, "Section 188 provides that, in the absence of an effective choice of law by the parties, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.' Restatement at 575, Section 188(1). To assist in making this determination, Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties."Ohayon, 91 Ohio St.3d at 477.
 {¶ 19} Here, the parties to the insurance contracts did not include choice of law provisions. Therefore, pursuant to Section 188 of the Restatement, we must look to the state with the most significant relationship to the transaction and the parties. The record reflects that Pacific, apparently a Pennsylvania company, acting through an agent located and doing business in Illinois, issued the business auto and CGL policies to Thomson Consumer Electronics in Indiana. Similarly, Lumbermens, a company with its principle place of business in Illinois, issued the umbrella policy to Thomson Consumer Electronics in Indiana through an Illinois agent.
 {¶ 20} While all of the policies at issue contemplated coverage of the Thomson Consumer Electronics facility, in Circleville, Ohio, Thomson did not report any vehicles as being located in the State of Ohio. Therefore, based upon the factors enumerated in Section 188 of the Restatement, application of the laws of Illinois or Indiana would be most appropriate here.
 {¶ 21} However, Detillion argues that Ohio law is applicable to the facts of this case based upon the Ohio Supreme Court's decision in Henderson v. Lincoln Natl. Specialty Ins. Co.
(1994), 68 Ohio St.3d 303. There, the court interpreted former R.C. 3937.18(A) to apply to insurance policies delivered out of state, but which cover vehicles registered or garaged in Ohio. However, we note that R.C. 3937.18(A) applies to insurance policies "issued for delivery * * * with respect to any motor vehicle registered or principally garaged in this state * * *." (Emphasis added.) Detillion does not dispute the fact that, at the time the subject insurance policies were issued, Thomson reported vehicles garaged in Indiana, New Jersey, Oregon, and Texas, but none in Ohio. Thus, Henderson is not applicable here.
 {¶ 22} Detillion further argues that Ohio law should apply because Ohio has the most significant relationship to the transaction and the parties. He cites Glover v. Smith, Hamilton App. Nos. C-020192 and C-020205, 2003-Ohio-1020, for the proposition that "Ohio has by far the greatest interest in the subject matter in dispute" based upon the location of the accident, the Ohio domicile of both drivers, and the "likelihood that the vehicle involved in the accident was garaged in Ohio."
 {¶ 23} However, the facts in Glover are distinguishable from the facts of this case in that the company insured inGlover had stores located and vehicles garaged in Ohio. Here, Thomson had a manufacturing facility located in Ohio, but, at the time the insurance policy was issued, reported no vehicles garaged in Ohio. Nor does the record reflect that Thomson had vehicles garaged in Ohio at the time of the accident. We find that, even if Ohio is the location of the accident, the state of domicile of both drivers, and the place that the vehicles involved in the accident were garaged, the focus of the inquiry is the state with the most significant relationship to thecontracting parties, not the parties to this suit. Thus, Detillion's choice of law argument must fail.
 {¶ 24} Detillion has advanced no argument that either Illinois or Indiana follows the decision of the Ohio Supreme Court in Scott-Pontzer on which he relies. Nor are we aware of any such authority.
 {¶ 25} Although it appears that the Illinois courts have not addressed the identical issue before this court, at least one Illinois appeals court has interpreted policy language identical to that at issue in Scott-Pontzer, with regard to coverage for family members. In doing so, the court determined that, where the named insured is a corporation, uninsured motorist coverage does not extend to cover employees or family members of employees for accidents that do not involve occupancy of covered vehicles. Further, the court concluded that to extend such coverage would be to rewrite the policy. Economy Preferred Ins. Co. v. JerseyCty. Const., Inc. (1993), 246 Ill. App.3d 387, 392,615 N.E.2d 1290, 1293-1294. Thus, it is unlikely that an Illinois court would readily adopt the Ohio Supreme Court's holding inScott-Pontzer to provide coverage to an employee, injured outside the scope of his employment, while riding in an automobile owned and operated by a third-party with no connection to the employer's business.
 {¶ 26} We also note that at least one Indiana court has addressed the meaning of the infamous "you" when the "named insured" is a corporation. See, e.g., Peterson v. Universal Fireand Cas. Ins. Co. (1991), 572 N.E.2d 1309. In Peterson, an officer of a used car dealership sought uninsured motorist coverage under a garage insurance policy issued to his employer, for injuries he sustained in an automobile accident while riding in a friend's automobile on a pleasure trip. The policy defined "Who is Insured," in relevant part, as "You or any family member." Peterson argued that the terms "you" and "family member" were ambiguous because a corporation cannot sustain bodily injury and cannot have family members. The Peterson Court found that, while Peterson was correct that a corporation cannot sustain bodily injury, a corporation may sustain property damage, which is also covered under the uninsured motorist endorsement.Peterson, 572 N.E.2d at 1311. Contrary to the Ohio Supreme Court's decision in Scott-Pontzer, the Indiana court concluded that there was no ambiguity in the contract terms, and that Peterson was not a covered individual under the terms of the policy. Id.
 {¶ 27} The Ohio Supreme Court noted in Westfield Ins. Co. v.Galatis (2003), 100 Ohio St.3d 216, ¶ 19, the Court's reasoning in Scott-Pontzer has been questioned. See, e.g. Seaco Ins. Co.v. Davis-Irish (C.A. 1, 2002), 300 F.3d 84, 87 (labelingScott-Pontzer as anomalous for consciously departing from the tenet that the intent of the parties controls the interpretation of a contract); Gibson v. New Hampshire Ins. Co. (S.D.Ohio 2001), 178 F. Supp.2d 921, 922, fn. 2, 3 (referring toScott-Pontzer's reasoning as a "mystery" and its conclusion as "preposterous"); Szabo v. CGU Internatl. Ins., PLC (S.D.Ohio 2002), 227 F. Supp.2d 820, 830, 833-834, fn.15 (citing "distracting internal inconsistencies" in Scott-Pontzer and classifying portions of it as "beguiling"); Lawler v. Fireman'sFund Ins. Co. (N.D.Ohio 2001), 163 F. Supp.2d 841, 842, 843
(strongly disagreeing with Scott-Pontzer and referring to the resulting "mess" and to the Ohio Supreme Court's "distortion" of the law).
 {¶ 28} Further, the Supreme Court has noted, "theScott-Pontzer rationale stands in stark contrast with decisions of the vast majority of states that have considered similar issues." Id., citing Concrete Services, Inc. v. United StatesFid. Guar. Co. (1998), 331 S.C. 506, 498 S.E.2d 865; GrainDealers Mut. Ins. Co. v. McKee (Tex. 1997), 943 S.W.2d 455;Buckner v. Motor Vehicle Acc. Indemn. Corp. (1986), 66 N.Y.2d 211,495 N.Y.S. 952, 486 N.E.2d 810; Foote v. Royal Ins. Co. ofAm. (1998), 88 Haw. 122, 962 P.2d 1004; Am. States Ins. Co.v. C G Contracting, Inc. (1996), 186 Ariz. 421, 924 P.2d 111;Michigan Twp. Participating Plan v. Pavolich (1998),232 Mich. App. 378, 591 N.W.2d 325; Younger v. Reliance Ins. Co.
(Tenn.App. 1993), 884 S.W.2d 453." Galatis, 100 Ohio St.3d at ¶ 19.
 {¶ 29} Based upon the decisions of the Illinois and Indiana courts of appeal discussed above, the widespread criticism of the Ohio Supreme Court's decision in Scott-Pontzer, and the Court's recent limitation of the application the Scott-Pontzer decision in Galatis to employees acting within the scope of employment, we agree with the trial court's conclusion that Scott-Pontzer
is not applicable under the laws of Illinois and Indiana.
 III. {¶ 30} Even if we were to assume, arguendo, that Ohio law applied to the facts of this case, Detillion could not prevail due to the Ohio Supreme Court's recent decision in WestfieldIns. Co. v. Galatis (2003), 100 Ohio St.3d 216.
 A. Pacific Business Auto Policy {¶ 31} Detillion argues that the Pacific business auto policy issued to Thomson provides UIM coverage through endorsement number 37, and that he qualifies as an insured pursuant to the Ohio Supreme Court's holding in Scott-Pontzer.
 {¶ 32} In Scott-Pontzer, the Ohio Supreme Court held that an uninsured motorist endorsement that identifies "you" as the named insured where "you" refers to a corporation extends coverage to an employee outside the scope and course of employment. However, as we have discussed above, the Ohio Supreme Court recently limited the application of its holding inScott-Pontzer, stating "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Galatis,
100 Ohio St.3d at ¶ 62. Because Detillion admits that he was not acting within the course and scope of his employment at the time of the loss, and the fact that there is no specific language providing coverage for employees outside the course and scope of their employment in the business auto policy, he cannot prevail on his claim for coverage under that insurance policy.
 B. Pacific Commercial General Liability Policy {¶ 33} Detillion argues that because the Pacific CGL policy provides limited coverage for liability arising out of the use of a motor vehicle due to its limited coverage of "(3) Parking for an `auto' on, or on the ways next to, premises you own or rent, * * *" it is a motor vehicle policy within the meaning of former R.C. 3937.18. Detillion is correct in his assertion that we have previously found coverage for this type of parking of an automobile to convert a CGL policy into a motor vehicle policy for purposes of former R.C. 3937.18. Rucker v. Davis, Ross App. No. 02CA2677, 2003-Ohio-3189, ¶ 25, affirmed by In re Uninsuredand Underinsured Motorist Coverage Cases (2003),100 Ohio St.3d 302, ¶ 38, 2003-Ohio-5888.[4] In Rucker, we concluded that, even though the CGL policy was a motor vehicle policy for purposes of former R.C. 3937.18, the insurer was not required to offer UM/UIM coverage to the insured because, pursuant to the terms of the policy, the insured was self-insured in the practical sense. Rucker at ¶ 32.
 {¶ 34} Here, however, even if we presume that Pacific was required to offer UM/UIM coverage in connection with the CGL policy pursuant to former R.C. 3937.18 due to the policy's limited coverage for parking of an automobile, we must determine whether Detillion was an insured within the meaning of the policy. Again, the Supreme Court's decision in Galatis limits the application of Scott-Pontzer to losses suffered by employees of the named insured corporation to those suffered in the course and scope of employment. Detillion admits that he was not acting in the course and scope of his employment at the time of his loss. Additionally, we note that the CGL policy also contains specific language limiting the definition of "insured" to "[y]our `employees' * * *, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Therefore, under Ohio law, Detillion cannot prevail upon his claim for coverage under the Pacific CGL policy.
 C. Lumbermens Umbrella Policy {¶ 35} The Lumbermens umbrella policy affords its insured two separate types of insurance coverage. "Coverage A" provides only excess coverage over the applicable limits of the underlying insurance, and applies only after the limits of the underlying policy are exhausted. "Coverage B" provides umbrella coverage for "* * * those sums that the insured becomes legally obligated to pay as damages, because of `bodily injury,' `property damage,' `personal injury' or `advertising injury' to which this insurance applies, but only if `underlying insurance' does not apply."
 {¶ 36} Detillion argues that he is an insured under "Coverage A" of the umbrella policy by virtue of the fact that he qualifies as an insured under the underlying primary policies issued to his employer. However, as we have previously discussed, Detillion does not qualify as an insured under the underlying insurance policies because he was not acting in the course and scope of his employment at the time of the accident.
 {¶ 37} Detillion does not argue that "Coverage B" applies or that he qualifies as an insured under that portion of the umbrella policy. However, Section III of the policy defines "who is an insured" to include the following: "1. If you are designated in the Declarations as: * * * c. An organization other than a partnership or joint venture, you are an insured. Your `executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are insureds, but only with respect to their liability as stockholders." Section III further provides: "6. Each of the following is also an insured: a. Your `employees," other than your `executive officers,' but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Thus, Detillion does cannot qualify as an insured pursuant to the terms of "Coverage B" under the umbrella policy.
 {¶ 38} Based upon the foregoing, we find that Detillion is not an insured under the Lumbermens umbrella policy and therefore cannot prevail on his claims against Lumbermens.
 IV. {¶ 39} In its cross-assignment of error, Lumbermens argues that Detillion is not entitled to coverage under the umbrella policy because he failed to satisfy the preconditions to coverage. We do not address this argument, as it is moot. See App.R. 12(A)(1)(c).
 {¶ 40} In conclusion, we find that either Illinois or Indiana law is applicable to the facts of this case, and that neither jurisdiction recognizes the Ohio Supreme Court's holding inScott-Pontzer. We also find that even if Ohio law were applicable to the facts presented here, Detillion is not an insured under the UM/UIM coverage of the Pacific business auto, Pacific CGL, or Lumbermens umbrella policies issued to Thomson Consumer Electronics pursuant to the Ohio Supreme Court's recent holding in Galatis. We find that there is no genuine issue as to any material fact, Pacific and Lumbermens are entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to Detillion.
 {¶ 41} Accordingly, we overrule Detillion's two assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
Harsha, J., Concurs in Judgment and Opinion.
Concurs in Judgment Only as to Part III-B.
Abele, J., Concurs in Judgment and Opinion.
[3] Pursuant to App.R. 3(C)(2), Lumbermens was not required to file a cross appeal because its cross-assignment of error asserts a defense, other than that relied upon by the trial court, which does not seek to change the underlying judgment.
[4] We issued our decision in Rucker five days after the trial court issued its judgment in this case.