DECISION AND JUDGMENT ENTRY JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court summary judgment in favor of Indemnity Insurance Company of North America, defendant below and appellee herein.
 {¶ 2} Melvin L. and Donna Craft, plaintiffs below and appellants herein, raise the following assignments of error:
 {¶ 3} "The trial court erred in ruling that ohio law did not apply to the interpretation of the business auto policy issued by indemnity insurance company to appellant's employer in order to determine appellant's rights to Um/Uim coverage under the policy."
 {¶ 4} The parties do not dispute the relevant facts. On September 13, 1999, Melvin Craft[1] suffered injuries in an automobile accident while in the course of his employment. The accident occurred when Craft's co-worker, Donald Minor, while attempting to avoid a collision, flipped a 1998 Volvo semi truck. The truck was owned by Ruan Leasing Company. At the time, Craft had been sleeping in the berth of the truck.
 {¶ 5} Appellants subsequently sought uninsured/underinsured (UM/UIM) coverage under Craft's employer's, Drivers, Inc.'s, policy that appellee issued to Vanguard Services, Inc., a parent company located in Indiana. Both parties filed summary judgment motions regarding appellants' entitlement to coverage.[2]
 {¶ 6} Appellants' motion asserted that under Scott-Pontzerv. Liberty Mut. Ins. Co. (1999), 85 Ohio St.3d 660,710 N.E.2d 1116, they are "insureds" under appellee's policy and thus entitled to UM/UIM coverage. They argued that the policy's use of the word "you" suffered the same ambiguity present inScott-Pontzer.
 {¶ 7} Appellee argued that under Ohayon v. Safeco Ins. Co.of Illinois (2001), 91 Ohio St.3d 474, 747 N.E.2d 206, Ohio law does not apply and that because Ohio law does not apply, appellants could not assert a Scott-Pontzer claim.
 {¶ 8} On October 2, 2003, the trial court granted summary judgment in appellee's favor. The court determined that underOhayon, Ohio law did not apply and thus that appellants could not seek UM/UIM coverage under a Scott-Pontzer theory.[3]
Appellants timely appealed the court's judgment.
 {¶ 9} In their sole assignment of error, appellants argue that the trial court erred by granting summary judgment in appellee's favor. Specifically, appellants contend that the trial court improperly applied the factors set forth in Ohayon to determine that Ohio law did not apply. They assert that Ohio law should apply because: (1) Drivers, Inc., a named insured under appellee's policy, is an Ohio corporation; (2) six percent of the vehicles covered under the contract are garaged in Ohio; (3) the accident occurred in Ohio; (4) appellant is an Ohio resident; and (5) the contract contains an Ohio UM/UIM endorsement.
 {¶ 10} Appellee argues that Ohio law does not apply because: (1) none of the parties to the insurance contract (the insured, broker, or insurance carrier) are based in Ohio; (2) the insured, Vanguard, an Indiana business, paid premiums out of its Indiana office; (3) the majority of the insured vehicles are not principally garaged in Ohio — the schedule of covered vehicles shows one vehicle located in Ohio, ten in Indiana;[4] and (4) the policy was issued and delivered to an Indiana corporation. Appellee recognizes that Vanguard has a business location in Ohio, that the accident occurred in Ohio, and that appellant is an Ohio resident, but contends that the foregoing factors do not sufficiently show that Ohio has the most significant relationship to the contracting parties. Appellee additionally asserts that the presence of an Ohio UM/UIM endorsement should not change the result:
 {¶ 11} "[T]he subject policy issued to Vanguard also contains uninsured motorist coverage endorsements for Indiana, Pennsylvania, South Carolina, and Texas. Following appellants' logic herein, essentially depending upon the location of a claimant or an accident, the subject insurance contract could be interpreted under the law of numerous states. That is totally contrary to the Restatement and Ohayon."
 {¶ 12} We initially note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer
(2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd.of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786.
 {¶ 13} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 14} Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 15} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 16} When Ohio insurance law conflicts with that of another state, a court must engage in a choice of law analysis. See, generally, Ohayon v. Safeco Ins. Co. (2001), 91 Ohio St.3d 474,747 N.E.2d 206. When the parties to an insurance contract do not specify which state's law applies to the contract's interpretation, a court should consider the factors set forth in Section 188 of the Restatement (2nd) of Conflict of Laws.[5] See id. at 477. Section 188 provides that when the parties do not specify the choice of law, the parties' "rights and duties under the contract are determined by the law of the state that, with respect to that issue, has `the most significant relationship to the transaction and the parties.'" Id. (quoting Restatement at 575, Section 188(1)). A court that considers which state has the most significant relationship to the transaction and to the parties should examine the following factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. See id. (citing Section 188). The above factors "are keyed to the justifiable expectations of the parties to the contract, not to the ultimate benefit of one party over another." Id. at 479.
 {¶ 17} Moreover, an analysis of the factors will "often correspond with the Restatement's view that the rights created by an insurance contract should be determined `by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" Id. (quoting Restatement at 610, Section 193).
 {¶ 18} In Ohayon, the court determined that Ohio law applied when (1) the insurance contract was executed and delivered in Ohio by Ohio residents and an Ohio-licensed insurance agent, (2) the policy insured vehicles principally garaged in Ohio, and (3) the accident occurred in Pennsylvania. See id. at 483.
 {¶ 19} A review of the cases that have examined Ohayon in the context of UM/UIM claims reveals that when an insurance policy covers vehicles that are principally garaged in Ohio, Ohio law generally will apply. See Vohsing v. Federal Ins. Co.,
Licking App. No. 2002CA101, 2003-Ohio-2511 (concluding that Ohio law applied when the policy covered four automobiles principally garaged in Ohio, the accident occurred in Ohio, the plaintiffs lived in Ohio, but the policy was issued and delivered in a different state); Glover v. Smith, Hamilton App. Nos. C-020192 and C-020205, 2003-Ohio-1020 (finding that Ohio law applied when (1) the policy was issued in New Jersey to a New Jersey corporation, (2) the corporation had stores and vehicles garaged in Ohio, (3) the accident occurred in Ohio, and (4) the policy contained an Ohio UM/UIM endorsement and rejection/selection form); Moore v. Kemper Ins. Co., Delaware App. No. 02CAE04018, 2002-Ohio-5930 (concluding that Ohio law applied when (1) the policy was negotiated and issued in Illinois, (2) the company had its principal place of business Illinois, (3) the company had businesses in Ohio, (4) two to three percent of the insured vehicles were principally garaged in Ohio, and (5) the policy offered Ohio UM/UIM coverage); Edmondson v. Premier Indus.Corp., Cuyahoga App. No. 81132, 2002-Ohio-5573 (finding that Ohio law applied when (1) the accident occurred in Georgia, (2) the contract was executed and delivered in Ohio, (3) the company did business in Ohio, and (4) the policy insured vehicles principally located in Ohio).
 {¶ 20} In contrast, if the place of contracting, negotiating, and principal location of the vehicles is not in Ohio, courts have refused to apply Ohio law. See Varecka v. Doe, Warren App. No. CA2002-06-053, 2003-Ohio-817 (concluding that Pennsylvania law applied when the contract was negotiated in Pennsylvania, the insurance premiums were paid in Pennsylvania, and the policy did not cover any vehicles principally garaged in Ohio); Hofle v.General Motors Corp., Twelfth App. No. CA2002-06-062, 2002-Ohio-7152 (finding that Kentucky law applied when rental car accident occurred in Ohio, but the vehicle was principally garaged in Kentucky and leased in Kentucky). Some courts have refused to find that the location of the insured risk was Ohio even when the policy covered vehicles registered and garaged in Ohio and when the vehicle was insured under the policy. See, e.g., Humbert v. United Ohio Ins. Co., 154 Ohio App.3d 540,2003-Ohio-4356; Randolph v. Ins. Co. of the State of Penn.,
Jefferson App. No. 99-JE-37, 2002-Ohio-5242; Carr v. Isaacs,
Butler App. No. CA2001-08-191, 2002-Ohio-1734; Redd v. NationalUnion Fire Ins. Co. (S.D.Ohio 2003), 241 F. Supp.2d 819. Rather, these courts have focused on the total number of vehicles covered under the policy and have concluded that the place of the majority of covered vehicles constituted the location of the insured risk.
 {¶ 21} Additionally, some courts have concluded that the existence of an Ohio UM/UIM endorsement or rejection form favors applying Ohio law. See Glover; Horston v. Pfannenschmidt,
Jefferson App. No. 02-JE-3, 2002-Ohio-7379 (concluding that Ohio law applied when the policy was issued in West Virginia, West Virginia was place of contracting and negotiating, and the policy contained an Ohio UM/UIM endorsement); Moore ("Included in the Kemper policy is an Ohio uninsured motorist coverage form. By offering Bank One UM/UIM coverage * * * Kemper conveyed its intent Ohio law would apply. Bank One and Kemper acknowledged a portion of the vehicles would be principally garaged in Ohio, thus conceding their understanding a certain amount of risk in Ohio."). But, see, Register v. Nationwide Mut. Fire Ins. Co.,
Hamilton App. Nos. C-020318 and C-020319, 2003-Ohio-1544 (concluding that Ohio law did not apply when (1) the accident occurred in Florida, (2) negotiations occurred in Illinois, (3) the principal place of business was Illinois, (4) the contract covered risks in Ohio, (5) some vehicles were located in Ohio, and (6) the insurance policy contained an Ohio UM/UIM form). At least one court has determined that the absence of an Ohio UM/UIM form shows the parties' intent that Ohio law would not apply. SeeReidling v. Meacham (2002), 148 Ohio App.3d 86, 772 N.E.2d 163, appeal not allowed, 95 Ohio St.3d 1483, 2002-Ohio-2668,769 N.E.2d 399 (concluding that Wisconsin law applied when Wisconsin was the place of contracting and negotiating, the contracting parties were domiciled in Wisconsin, and the policy did not provide Ohio UM/UIM coverage).
 {¶ 22} Although no one factor should be determinative, one factor, such as the location of the insured risk, may weigh more heavily than others, such as the place of contracting or the site of the accident. In Ferris, for example, we concluded that Ohio law would not apply when: (1) the policy was issued and delivered to a Tennessee corporation; (2) the policy did not cover any vehicles principally garaged in Ohio; (3) the policy did not contain an Ohio UM/UIM endorsement; (4) the plaintiff was an Ohio resident; (5) the corporation maintained business operations in Ohio; and (6) the accident occurred in Ohio.
 {¶ 23} Similarly, in Detillion v. State Farm Mut. Auto. Ins.Co., Ross App. No. 03CA2729, 2004-Ohio-949, we concluded that Ohio law did not apply. In Detillion, the insurer, a Pennsylvania company, acting through an agent in Illinois, issued a business automobile policy to an Indiana company, which had a facility in Ohio. The company did not, however, report any vehicles as being located in Ohio. Based upon these factors, we concluded that even though the accident occurred in Ohio and involved an Ohio resident, Ohio law did not apply. InPitsenbarger v. Foos, Miami App. Nos. 2003-CA-22, 2003-CA-26, 2003-CA-27, 2003-Ohio-6534, the court concluded that Ohio law applied even though (1) the insurance policy "was contracted for, negotiated and delivered in Illinois"; and (2) the insured was a Delaware corporation with headquarters in Texas. The court found that Ohio had the most significant contacts to the transaction because the insured maintained business locations throughout Ohio and because the policy covered some vehicles that were principally garaged in Ohio.
 {¶ 24} In Glover, the court likewise concluded that Ohio law should apply based upon the following factors: (1) the accident occurred in Ohio; (2) both drivers were Ohio residents; and (3) the employer had company vehicles principally garaged in Ohio. The court observed that the contract was negotiated in New Jersey, but determined that the above factors demonstrated that "Ohio ha[d] by far the greatest interest in the subject matter in dispute." In Register v. Nationwide Mut. Fire Ins. Co.,
Hamilton App. Nos. C-020318 and C-020319, 2003-Ohio-1544, the court concluded that Ohio law should not apply, primarily because the accident did not occur in Ohio. The court stated: "[T]he accident did not occur in Ohio and did not involve [an insured] vehicle garaged in Ohio. In McRoberts v. Kemper RiskManagement, Hamilton App. No. C-030115, 2003-Ohio-5517, the court determined that Ohio law applied when: (1) the accident occurred in Ohio; (2) the insured had "a number of other" vehicles principally garaged in Ohio; (3) the driver of the car was an Ohio resident.
 {¶ 25} In Sarka v. Love, Cuyahoga App. No. 83446, 2004-Ohio-1911, the court determined that Ohio law applied when: (1) the policy covered 834 vehicles principally garaged in Ohio; (2) the injured party's vehicle "was registered and garaged in Ohio and it was covered under the policy because he was within the course and scope of his employment at the time of the accident"; and (3) the policy contained an Ohio UM/UIM endorsement. The court recognized that the policy was negotiated and delivered in New York, but concluded that "the location of the insured risk [was] more significant especially since there is nothing in the policy's terms indicating that [the insurer] believed New York law would apply." The court rejected the argument that Ohio law should not apply based on the insurer's New York incorporation and the employer's Delaware incorporation. The court instead noted that the employer, Time Warner, maintains offices across the country and its insurance policy contemplates nationwide coverage, thus "`defeat[ing]' [the insurer's] claim that New York contacts are significant." In Foster v. MotoristsIns. Co., Mercer App. No. 10-03-07, 2004-Ohio-1049, the court determined that Texas law, not Ohio law, applied when: (1) the contract was formed in Texas; (2) the policy was negotiated in Texas; (3) the policy consisted of Texas forms and was filed in the Texas Department of Insurance; (4) the policy lists only three automobiles as covered autos, all of which were listed as being located and principally garaged in Texas; and (5) the named insured's principal place of business is Texas.
 {¶ 26} In the case sub judice we need not, at this juncture, determine whether Ohio or Indiana law applies. As we noted at the beginning of our analysis, the first step is to determine whether Ohio insurance law conflicts with the other state's law alleged to be applicable. "Before engaging in any choice of law analysis, a court must first determine whether such analysis is necessary. If the competing states would use the same rule of law or would otherwise reach the same result, there is no need to make a choice of law determination because there is not conflict of law." See McDonald v. Williamson, Cuyahoga App. No. 81590, 2003-Ohio-6606, at ¶ 7 (citing Akro-Plastics v. Drake Indus.
(1996), 115 Ohio App.3d 221, 224, 685 N.E.2d 246).
 {¶ 27} At the time of the trial court's decision, a conflict between Ohio and Indiana law apparently was a foregone conclusion based upon the highly-criticized Scott-Pontzer decision. Currently, however, the Ohio Supreme Court recognizes that when an insurance contract is ambiguous, the word "you" includes employees in the course and scope of employment. See Galatis.
The Galatis decision supposedly brought Ohio into the mainstream. Thus, whether Ohio insurance law conflicts with Indiana law is not apparent to us. Without a determination regarding whether a conflict between Indiana and Ohio law exists regarding an employee's UM/UIM claim for injuries suffered during the course and scope of employment, we cannot properly engage in a choice of law analysis. Consequently, we hereby reverse the trial court's judgment and remand this matter so that the trial court may determine whether a conflict actually exists between Ohio and Indiana law in light of Galatis. If a conflict does indeed exist, the court may then engage in a choice of law analysis.
 {¶ 28} Accordingly, based upon the foregoing reasons, we sustain appellants' assignment of error, reverse the trial court's judgment, and remand this matter for further proceedings consistent with this opinion.
Judgment reversed and remanded for further proceedings consistent with this opinion.
It is ordered that the judgment be reversed and case remanded for further proceedings consistent with this opinion. Appellants shall recover of appellees the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Kline, P.J., and Harsha, J., Concur in Judgment Only.
[1] Unless otherwise noted, "Craft," as used throughout this opinion refers to Melvin Craft.
[2] Interestingly, although both parties and the trial court acknowledge the filing of appellee's summary judgment motion, purportedly on June 18, 2003, the motion is not listed on the Clerk's docket sheet and it is not included in the court record. However, because no one disputes its existence or its substance, we presume that it does indeed exist.
[3] We observe that throughout the trial court proceedings, appellants asserted their entitlement to coverage based onScott-Pontzer not because appellant was in the course and scope of employment, but because of the term "you" in appellee's policy. Appellants did not argue that they were entitled to coverage under appellant's employer's policy because his injury occurred during the course and scope of employment. UnderWestfield v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, the Scott-Pontzer rationale continues to apply to employees whose injuries occur in the course and scope of employment. Thus, we note that the present case is one of the unique cases in which the Scott-Pontzer rationale, as refined in Galatis, would apply.
[4] We have been unable to locate this schedule in the court file.
[5] In Ferris v. Rawn, Lawrence App. No. 02CA39, 2003-Ohio-441, we set forth the law governing choice of law principles under Ohayon and essentially repeat those principles in this opinion.