**BYER et al., Appellant,**

v.

**WRIGHT et al.; Liberty Mutual Group, Appellee.**

[Cite as *Byer v. Wright,* 160 Ohio App.3d 472, 2005-Ohio-1797.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2004–P–0029.

Decided April 15, 2005.

Paul W. Flowers and Paul Grieco, for appellant.

Holly Marie Wilson, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Dean A. Byer appeals from the judgment of the Portage County Common Pleas Court, which granted summary judgment in favor of appellee, Liberty Mutual Group ("Liberty Mutual"), on Byer's declaratory-judgment action. We affirm.

{¶ 2} The facts of this case are not in dispute. On September 19, 2000, the vehicle Byer was driving was rear-ended by a vehicle driven by Renee Wright. At the time of the collision, Byer was driving a vehicle owned by his employer, Ecolab, Inc. ("Ecolab"). Byer was acting in the course and scope of his employment at the time of the collision.

{¶ 3} Byer filed suit against Renee Wright, David Wright (the owner of the vehicle Renee Wright was driving at the time of the collision), and Liberty Mutual.[1] Byer settled his claims against the Wrights for the available policy limits of $50,000. This settlement was made with Liberty Mutual's consent.

{¶ 4} The case proceeded on Byer's declaratory-judgment action for underinsured-motorist coverage under a policy issued by Liberty Mutual to Ecolab. Byer and Liberty Mutual moved for summary judgment. The trial court denied Byer's motion for summary judgment and entered judgment in favor of Liberty Mutual on its motion. Byer filed a timely appeal raising one assignment of error: "The trial court erred, as a matter of law, by granting summary judgment in favor of defendant-appellee, Liberty Mutual Group, and against plaintiff-appellant, Dean A. Byer, with respect to his claim for underinsured motorist coverage."

{¶ 5} Byer's assignment of error raises five issues for our consideration:

---

1. Byer's wife, Rebecca, was also a party to the original suit but is not a party to this appeal.

{¶ 6} "1. Is an employee of a [n]amed [i]nsured who is injured while occupying a company vehicle in the course and scope of his employment an 'insured' under a standard [c]ommercial [a]uto [p]olicy?

{¶ 7} "2. Does a company vehicle qualify as 'any auto' under a [c]ommercial [a]uto [p]olicy?

{¶ 8} "3. Can commercial insurance carriers issue policies covering thousands of vehicles nationwide but still only have to comply with the laws of the single state where the insuring agreement was issued?

{¶ 9} "4. Does a written rejection of 'uninsured' coverage somehow also apply to 'underinsured' motorist coverage?

{¶ 10} "5. Does a 'reimbursement' agreement between the underinsured motorist carrier and the [n]amed [i]nsured have any bearing upon an employee's claim for coverage?"

{¶ 11} We review a grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, i.e., independently and without deference to the trial court's determination. *Lexford Properties Mgmt., L.L.C. v. Lexford Property Mgmt., Inc.* (2001), 147 Ohio App.3d 312, 316, 770 N.E.2d 603.

{¶ 12} Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 13} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 14} If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing there is a genuine issue for trial. Id.

{¶ 15} We first address Byer's third issue. Under this issue, Byer argues that Ohio's substantive law applies, while Liberty Mutual contends that Minnesota law applies. We conclude that Ohio law applies.

{¶ 16} In *Ohayon v. Safeco Ins. Co.* (2001), 91 Ohio St.3d 474, 747 N.E.2d 206, the Ohio Supreme Court held:

{¶ 17} "1. An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions.

{¶ 18} "2. Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." Id. at paragraphs one and two of the syllabus.

{¶ 19} Section 188 provides that when the contracting parties have not made an effective choice of law, their rights and duties under the contract are determined by the law of the state that, with respect to that issue, has "the most significant relationship to the transaction and the parties." Id. at 477, 747 N.E.2d 206, citing the Restatement at 575, Section 188(1). To make this determination, "Section 188(2)(a) through (d) more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Id.

{¶ 20} In automobile-insurance cases, application of these factors will often correspond with the Restatement's view that the rights created under an insurance contract should be determined by the law of the state the parties understood was to be the place where the insured vehicles were principally garaged or registered, unless with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties. Id. at 479, 747 N.E.2d 206, citing Restatement at 610, Section 193. See, also, *Ferris v. Rawn*, 4th Dist. No. 02CA39, 2003-Ohio-4441, 2003 WL 21995256, at ¶ 8–10.

{¶ 21} Liberty Mutual contends that Minnesota law applies because the insurance contract was delivered to Ecolab at its principal place of business in Minnesota. We disagree.

{¶ 22} In this case, the record shows that Ecolab purchased the insurance policy at issue to cover vehicles registered and principally garaged in Ohio. While the policy also covered vehicles registered and principally garaged in other states, these other states do not have a more significant relationship to the transaction and parties than does Ohio in this case.

{¶ 23} We agree with the Eighth District Court of Appeals, which stated:

■ {¶ 24} "Where nationwide coverage is provided, the policy's legitimate expectation is that the site of the insured risk is more significant than the insurer's residence or the place of negotiation. When a large insurer issues a policy designed to apply nationwide, it has no legitimate expectation that the law of its residence will apply in other states." *McDonald v. Williamson,* 8th Dist. No. 81590, 2003-Ohio-6606, 2003 WL 22922271, ¶ 22, citing *Jocek v. Nationwide Mut. Fire Ins. Co.* (June 16, 1994), 8th Dist. No. 64827, 1994 WL 264506. See, also, *Sarka v. Love,* 8th Dist. No. 83446, 2004-Ohio-1911, 2004 WL 816831.

{¶ 25} We also note that the insurance policy contains a document notifying Ecolab of the requirements of Ohio law with respect to uninsured-motorist and underinsured-motorist ("UM/UIM") coverage. The policy also contains an Ohio endorsement. While their decisions are not necessarily dispositive, other courts have found that such changes evidenced intent by the parties to be bound by Ohio law. See, *Sarka,* supra at ¶ 21, citing *Garcia v. Green,* Lucas App. L–02–1351, 2003-Ohio-3841, 2003 WL 21674971, ¶ 24; *Vohsing v. Fed. Ins. Co.,* Licking App. No. 2002–CA–00101, 2003-Ohio-2511, 2003 WL 21122665, ¶ 26; *Amore v. Grange Ins. Co.,* Richland App. No. 02CA70, 2003-Ohio-3207, 2003 WL 21419184, ¶ 25; *Glover v. Smith,* Hamilton App. Nos. C–020192 and C–020205, 2003-Ohio-1020, 2003 WL 832493, ¶ 8; and *Horston v. Pfannenschmidt,* 7th Dist. No. 02–JE–3, 2002-Ohio-7379, 2002 WL 32098115, ¶ 13.

{¶ 26} For these reasons, we conclude that we must apply Ohio substantive law in the instant case.

■ {¶ 27} The determinative issue in this appeal is whether Ecolab validly rejected UIM coverage. We find that it did.

{¶ 28} The parties agree that the H.B. 261 version of R.C. 3937.18, effective September 3, 1997 applies. The relevant portion of this statute provided:

{¶ 29} "A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants."

{¶ 30} In *Linko v. Indemn. Ins. Co.* (2000), 90 Ohio St.3d 445, 449, 739 N.E.2d 338, the Ohio Supreme Court found that a valid rejection of UM/UIM coverage

under the pre-H.B. 261 version of R.C. 3937.18(C) required the following elements: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits.

{¶ 31} In *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, the Ohio Supreme Court was asked to determine two questions certified by the United States District Court for the Northern District of Ohio, Western Division. These questions were:

{¶ 32} "(1) Are the requirements of *Linko v. Indemnity Ins. Co.* [2000], 90 Ohio St.3d [445, 739 N.E.2d 338], relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97?

{¶ 33} "(2) If the *Linko* requirements are applicable, does, under [1997] HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?" Id. at ¶ 2–3.

{¶ 34} The court answered yes to the first question and no to the second. Id. at ¶ 4.

{¶ 35} Recently, the Ohio Supreme Court resolved the question of whether extrinsic evidence may be used to demonstrate compliance with *Linko*. *Hollon v. Clary*, 104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881. There the court held:

{¶ 36} "A signed, written rejection of uninsured/underinsured motorist coverage is valid under the H.B. 261 version of R.C. 3937.18 if it was made in response to an offer that included a brief description of the coverage and the coverage premiums and limits. Once a signed rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence." Id. at syllabus.

{¶ 37} In the instant case, Liberty Mutual produced a signed rejection form. Although the form itself did not comply with the requirements of *Linko*, Liberty Mutual submitted the affidavit of John Spies, Ecolab's Director of Corporate Risk Management. In his affidavit, Spies averred that prior to executing the UM/UIM-coverage rejection form, he was aware (1) of the availability of UM/UIM coverage in Ohio with limits matching the policy's liability limits, (2) of a thorough description of such coverage, (3) of the purpose of such coverage, (4) of the premium for such coverage, and (5) that Liberty Mutual was required to offer UM/UIM coverage with limits matching the policy's liability limits. Thus, this extrinsic evidence, properly considered under *Hollon*, demonstrates that Ecolab validly rejected UM/UIM coverage.

{¶ 38} Byer argues that the rejection was invalid because the box that Ecolab marked to reject coverage stated only: "I rejected UNINSURED MOTORISTS COVERAGE-bodily injury." Byer argues that this statement demonstrates

Ecolab's intent to reject only UM coverage and not UIM coverage. However, the first paragraph of the same form states, "Ohio law requires that we provide Uninsured Motorists Coverage–Bodily Injury (*including Underinsured Motorists*) on your auto policy * * *." (Emphasis added.) Thus, for purposes of this form, uninsured-motorist coverage was defined to include underinsured-motorist coverage. The rejection was valid as to both types of coverage.

{¶ 39} Because we determine that Ecolab validly rejected UIM coverage, we need not reach the other issues raised by appellant, as they are moot. For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.