[Cite as *Barrera v. Ins. Co. of State of Pennsylvania*, 2010-Ohio-4829.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

DANIEL C. BARRERA, ET AL.,

    PLAINTIFFS-APPELLANTS,        CASE NO.  4-10-06

    v.

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, ET AL.,        O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Defiance County Common Pleas Court
Trial Court No. 07 CV 38454

Judgment Reversed and Cause Remanded

Date of Decision:  October 4, 2010

APPEARANCES:

    *Jennifer N. Brown and Joseph W. O'Neil* for Appellants

    *M. Charles Collins and Mark W. Sandretto* for Appellees

**ROGERS, J.**

{¶1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry. Plaintiff-Appellants, Daniel C. Barrera, Anita Barrera, Noel Barrera, and Samantha Barrera (hereinafter collectively referred to as "Appellants"), appeal the judgment of the Court of Common Pleas of Defiance County holding that Nebraska law governed an insurance policy issued by Defendant-Appellee, The Insurance Company of the State of Pennsylvania (hereinafter referred to as "ICSP"), to Defendant-Appellee, Werner Enterprises, Inc. (hereinafter referred to as "Werner") (ICSP and Werner hereinafter jointly referred to as "Appellees"). On appeal, Appellants argue that the trial court was required to find insurance coverage by operation of law pursuant to the uninsured/underinsured motorist (hereinafter referred to as "UM/UIM") statute, R.C. 3937.18(A),(C), and that the trial court was required to find that Ohio law applied to the insurance policy. Based upon the following, we reverse the judgment of the trial court.

{¶2} In March 2007, Appellants filed a complaint against ICSP claiming that, in April 2004, Barrera was acting within the scope of his employment for Werner when he was injured in the state of Illinois due to the negligent operation of a motor vehicle by Edwardo Salgado, a UM/UIM; that Barrera suffered bodily injury and pain and suffering, and incurred medical expenses and lost earnings;

that his wife and children, Anita, Noel, and Samantha, had lost services and consortium of Barrera; that ICSP had issued a policy of insurance to Werner in 1999, which was still in effect at the time of the accident in April 2004; and, that the insurance policy provided Appellants with UM/UIM coverage.

**{¶3}** In May 2007, ICSP answered Appellants' complaint.

**{¶4}** In November 2008, Appellants filed an amended complaint, including Werner as an involuntary plaintiff.

**{¶5}** In January 2008, Werner filed a motion seeking re-designation as a defendant rather than in involuntary plaintiff, which the trial court granted.

**{¶6}** In May 2009, Werner answered Appellants' request for interrogatories, providing that Werner trucks drove 68,035,185 miles in Ohio in 2004; that Werner had 13,722 employees in 2004; that Werner had 1,620 employees with Ohio addresses in 2004; and, that, to its best information, 9,044[1] Werner-owned trucks and 1,322 owner-operator trucks travelled at least one mile in Ohio in 2004.

**{¶7}** Shortly thereafter, the parties stipulated to the following facts, in part:

> **(1)  On or about April 13, 2004, Plaintiff Daniel C. Barrera was involved in an automobile collision in the State of Illinois with**

---

[1] We note that this figure contradicts Werner's 10-K filing stating that it owned a total of 8,600 trucks in 2004; however, this error does not affect our analysis.

> **Edward Salgado. Mr. Salgado was the at-fault party in the collision.**
> **(2) A lawsuit was filed by Daniel Barrera in Illinois against the tortfeasor.**
> **(3) Discovery in the lawsuit against the tortfeasor revealed that the limits on the tortfeasor's insurance coverage through American Family Insurance was $100,000. American Family Insurance offered $90,000 in full settlement of its claim.**
> **(4) In 2004, Werner moved freight through the state of Ohio for more than 20 of its customers * * ***
> **(5) In 2004, Werner had multiple drop yards in the State of Ohio. * * ***

Additionally, the parties stipulated to information contained in Werner's 10-K filing with the Securities and Exchange Commission for 2004 including that Werner's headquarters were in Nebraska; that Werner owned a total of 8,600 trucks in 2004; that Werner operated throughout the 48 contiguous states; and, that Werner owned a terminal in Springfield, Ohio.

{¶8} Shortly thereafter, Appellees filed a joint motion for summary judgment. To their motion, Appellees attached an affidavit of Mark Ackland, Werner's Risk Manager. Appellees' motion argued that the policy of insurance issued to Werner by ICSP did not provide Appellants with UM/UIM coverage; that Ackland negotiated the policy of insurance in Nebraska through its insurance broker in Missouri; that Ackland accepted the policy upon receiving it in Nebraska and paid all premiums from Werner's office in Nebraska; that, as part of the 1999 negotiation, Ackland, acting on Werner's behalf, executed UM/UIM

coverage rejection/limitation forms for each of the fifty states; that the Nebraska form demonstrated Ackland did not request any UM/UIM coverage in excess of the mandatory $50,000; and, that the Ohio form reflected that Ackland intended to reject Ohio UM/UIM coverage. Concerning Werner's location, Appellees stated that, according to Ackland's affidavit and deposition, Werner was organized under the laws of Nebraska; that Werner's headquarters, corporate offices, and principal place of business were located in Nebraska; that Werner's drivers travelled the most miles in Texas from 1998 through 2004; that Texas had two Werner trucking terminals and fourteen other states had one terminal each; that twenty individual states each represented 2% of the total miles driven; and, that all of Werner's trucks, including Barrera's, were registered in Nebraska from 1998 through 2004.

{¶9} In light of these facts, Appellees contended that a conflict existed between the UM/UIM coverage laws of Nebraska, Texas, and Ohio; that Ohio law, specifically R.C. 3837.18, required an offer of UM/UIM coverage for vehicles registered or principally garaged in Ohio; that, in order to be effective, a rejection of such coverage must be a signed writing including a description of the coverage, the coverage premiums, and the applicable limits; and, that, where a valid rejection is not made under R.C. 3837.18, UM/UIM coverage exists by law. Appellees continued that, because there was a conflict of laws, the Restatement of Conflicts §188 provided the choice of law analysis; that the pertinent factors to

consider in determining which state had the most significant relationship to the matter were (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and, that, applying those factors to the situation sub judice, Nebraska was the place of contracting. Appellees based this conclusion on the facts that Werner negotiated the contract in Nebraska; that the contract was performed in Nebraska, or throughout the United States; that the location of the subject matter/principal location of the insured risk was throughout the United States, with the most miles driven in Texas; that Nebraska was Werner's state of incorporation and principal place of business; and, that it was improper to consider any other factors in a choice of law analysis. Appellees concluded that, applying either Nebraska or Texas law, no UM/UIM coverage existed for the Appellants.

{¶10} Shortly thereafter, Appellants filed a motion for summary judgment on the issue of insurance coverage under policies of insurance issued to Werner by ICSP, stating that Barrera learned of the trucking position at Werner after seeing an ad in an Ohio newspaper; that, in 2003, he received three days of training at a Werner facility in Springfield, Ohio; that his trucking route began and ended each day in Archbold, Ohio; that he drove in Ohio at some point during all of his trucking routes; and, that he periodically would pick up and drop off trailers for

Werner in Girard, Ohio. Appellants argued that Ohio law governed interpretation of the insurance policy because Ohio had the most significant contacts with the transaction, including that Barrera lived in Ohio when he was hired; that he was recruited for employment via an Ohio newspaper; that he was trained in Springfield, Ohio, and ended his trucking routes in Archbold, Ohio; that he traveled through Ohio at some point during all of his routes; that he picked up and dropped off trailers in Girard, Ohio; and, that his truck was stored in Archbold, Ohio, when not in use. Additionally, Appellants averred that Werner had 1,620 employees in Ohio; that Werner employees drove 68,035,185 miles in Ohio in 2004; and, that Werner trained its employees in Ohio. Finally, Appellants argued that, under Ohio law in effect at the time the policy was entered into, Werner did not sufficiently reject UM/UIM coverage. Consequently, appellants argued that UM/UIM coverage applied to the original policy and subsequent renewals of the policy by operation of law.

{¶11} In February 2010, the trial court issued a judgment entry on the parties' cross-motions for summary judgment. The trial court applied Section 188 of the Restatement of the Law 2nd, Conflicts of Laws (1971), and found that Nebraska law governed the case. Specifically, the trial court found that neither "Ohio nor Texas are remotely close to having the most significant relationship to the transaction and the parties. * * * It is apparent from argument that Plaintiff

-7-

misapprehends the status of the Plaintiff in the relationship to the legal question currently before the court. The residence of Plaintiff and the physical location of the vehicle, either at the time of the accident (Illinois) or prior to that (Ohio), are immaterial to the "transaction" and "parties" to the contract at issue." (Feb. 12 Judgment Entry, p. 5). Accordingly, the trial court found that Appellees were entitled to judgment as a matter of law and declared that, under Nebraska law, no UM/UIM coverage existed in favor of Appellants under the policy. Consequently, the trial court dismissed Appellants' claims with prejudice.

{¶12} It is from this judgment that Appellants appeal, presenting the following assignment of error for our review.

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW APPLYING §188 OF CONFLICTS OF LAW AND HOLDING THAT NEBRASKA LAW GOVERNS THE INSURANCE POLICIES OF WERNER.**

{¶13} In their sole assignment of error, Appellants argue that the trial court was required to find UM/UIM coverage by operation of law pursuant to R.C. 3937.18(A),(C), and that the trial court was required to find that Ohio law applied to the insurance policies under a choice of law analysis.

*Standard of Review*

{¶14} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175.

-8-

Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp*., 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶15} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support its argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the

existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

*Choice of Law in Contract Actions*

{¶16} The definitive case on choice of law in actions in contract is *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 2001-Ohio-100. In *Ohayon*, the Supreme Court of Ohio held that "[a]n action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions," 91 Ohio St.3d 474, at paragraph one of the syllabus, citing *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 341. See, also, *Foster v. Motorists Ins. Co.*, 3d Dist. No. 10-03-07, 2004-Ohio-1049, ¶12. The Court held that "[q]uestions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971)." *Ohayon*, 91 Ohio St.3d 474, at paragraph two of the syllabus.

{¶17} Where a contract lacks an effective choice of law by the parties, the Supreme Court held that the contract will be governed by "the law of the state that, with respect to that issue, has 'the most significant relationship to the transaction and the parties.'" *Ohayon*, 91 Ohio St.3d at 477, quoting Restatement at 575,

Section 188(1). In determining which state has the most significant relationship, the Supreme Court found that Section 188(2)(a) through (d) specifically provide that courts should consider (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Id. at 477. Further, the Supreme Court specified that "Section 188's choice-of-law methodology focuses on the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile *of the contracting parties*." (Emphasis added) Id. at 479.

{¶18} The Supreme Court continued that, "[i]n insurance cases, this focus will often correspond with the Restatement's view that the rights created by an insurance contract should be determined 'by the local law of the state which the parties understood was to be the *principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties.'" (Emphasis sic.) Id. at 479, quoting Restatement at 610, Section 193. "'[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question.'" Id., quoting Restatement at 611, comment b. "The principal location of the insured

risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors-the location of the subject matter of the contract."  Id.

{¶19} Other courts have interpreted *Ohayon* as holding that "the focus of the inquiry is the state with the most significant relationship to the *contracting parties*, not the parties to [the] suit."  *Detillion v. State Farm Mut. Auto. Ins. Co.*, 4th Dist. No. 03CA2729, 2004-Ohio-949, ¶23 (finding it inconsequential that Ohio was the location of the accident and the state of domicile of both drivers).

*Assignment of Error*

{¶20} Here, Appellants first argue that choice of law analysis under *Ohayon* was unnecessary because R.C. 3937.18 automatically applies to any vehicle registered or principally garaged in the state of Ohio under *Henderson v. Lincoln Natl. Specialty Ins. Co.*, 68 Ohio St.3d 303, 1994-Ohio-100.

{¶21} R.C. 3937.18(A) provides, in pertinent part:

**Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages.**

{¶22} In *Henderson*, the Supreme Court of Ohio held that R.C. 3937.18 applies "to an automobile liability or motor vehicle liability policy of insurance

covering vehicles registered and principally garaged in Ohio, when said policy was not delivered, or issued for delivery in Ohio by the insurer[.]" 68 Ohio St.3d at 303. However, this Court and several other appellate districts have found that, because *Henderson* only answered a limited question certified to it and did not address choice of law issues, it was not controlling in cases in which choice of law issues were actually raised. See *Sarka v. Love*, 8th Dist. No. 83446, 2004-Ohio-1911, ¶10, citing *Redd v. Natl. Union Fire Ins. Co.* (S.D.Ohio 2003), 241 F.Supp.2d 819, 824; *Humbert v. United Ohio Ins. Co., et al.*, 3d Dist. No. 13-03-22, 2003-Ohio-4356, ¶11, fn. 1; *Akins v. Harco Ins. Co.*, 158 Ohio App.3d 292, 2004-Ohio-4267, ¶19, reversed on other grounds by 106 Ohio St.3d 41, 2005-Ohio-3557 (finding that "the location where the insured vehicle is principally garaged would, in the case under consideration, be but one factor in determining a choice-of-law question"). Accordingly, although the vehicle in the case sub judice was principally garaged in Ohio, we do not find that R.C. 3937.18 precludes choice of law analysis, as that issue has been raised in this case.

{¶23} Next, we turn to Appellants' second argument that the trial court erred in finding Ohio law did not apply under choice of law analysis. Appellants argue that, if choice of law analysis was necessary, the trial court was required to find that Ohio law applies to the insurance policy under the Restatement of the Law 2d, Conflicts of Laws, Section 188, and, consequently, that the trial court was

required to find insurance coverage by operation of law pursuant to the UM/UIM statute, R.C. 3937.18(A),(C). Specifically, Appellants argue that the trial court should have applied Ohio law because Ohio had the most significant contacts with the case including that Barrera's truck was principally garaged in Ohio; that Barrera was an Ohio resident; that Barrera served Werner's interests in and around Ohio; that the truck's location and place of performance was Ohio for at least a portion of every trip; that Werner had drivers that drove trucks in Ohio; that Werner had a terminal in Ohio; and, that Werner trailers were taken to drop yards throughout Ohio. Appellants cite *Glover v. Smith*, 1st Dist. Nos. C-020192, 020205, 2003-Ohio-1020; *Sarka*, supra; *Garcia v. Green*, 6th Dist. No. L-02-1351, 2003-Ohio-3841; *Byer v. Wright*, 160 Ohio App.3d 472, 2005-Ohio-1797; and, *Riddle v. Wiegand*, 12th Dist. No. CA2002-12-027, 2003-Ohio-3072, for the proposition that the place of contract is of reduced importance in determining which state bears the most significant relationship to the transaction. Appellees respond that the situation is analogous to that in *Humbert*, supra, and thus, that it is irrelevant where Barrera's truck was principally garaged or how many of Werner's vehicles were principally garaged in Ohio.

{¶24} In *Humbert*, this Court examined a similar, but not completely analogous, situation. Applying the factors in *Ohayon*, we determined that New Jersey represented the most significant relationship to the transaction and the

parties where "(1) the contract was formed in New Jersey, (2) the contract was negotiated in New Jersey, (3) the contract was performed throughout the United States, (4) the automobiles that were insured were located throughout the United States with a small number in Ohio, and (5) American Standard [the insured employer] is incorporated in Delaware with its principal place of business in New Jersey, and Travelers [the insurer] has its headquarters in Connecticut." 2003-Ohio-4356, ¶12, citing *Powers v. CGU Indiana-Ohio Valley*, 10th Dist No. 01AP-440, 2001-Ohio-8877; *Nationwide Ins. Co. v. Phelps*, 7th Dist. No. 2002 CO 27, 2003-Ohio-497, ¶13; *Carr v. Isaacs*, 12th Dist. No. CA2001-080191, 2002-Ohio-1734; *Pennsylvania Gen. Ins. Co. v. Shoults* (S.D.Ohio 2002), 2002 WL 485017. Several courts have cited *Humbert* for "refus[ing] to find that the location of the insured risk was Ohio even when the policy covered vehicles registered and garaged in Ohio and the vehicle was insured under the policy." *Sarka v. Love*, supra; *Craft v. W. Res. Mut. Cas. Co.*, 4th Dist. No. 03CA24, 2004-Ohio-4105, ¶20. However, despite these districts' inferences, we note that it is unclear from the *Humbert* decision whether the vehicle at issue was principally garaged and/or registered in Ohio, or how many of its total vehicles were principally garaged and/or registered in Ohio.

{¶25} Using the *Ohayon* analysis, Courts have found that Ohio had the most significant relationship with transactions where, although New Jersey was

the place of contracting, the insured employer had stores located in Ohio and vehicles garaged in Ohio, and where there was evidence that the vehicle in question was principally garaged in Ohio, *Glover*, supra (finding that the "'principal location of the insured risk,' which is referred to in Section 193 of the Restatement as the primary factor in a contract of casualty insurance, was in Ohio"); where, although an "overwhelming" number of the insured employer's vehicles were garaged in New York, 834 vehicles were insured in Ohio, and the vehicle at issue was registered and garaged in Ohio, *Sarka*, supra (finding that, "where nationwide coverage is provided, the policy's legitimate expectation is that the site of the insured risk is more significant than the insurer's residence or the place of negotiation. When a large insurer issues a policy designed to apply nationwide, it has no legitimate expectation that the law of its residence will apply in other states"); and, where, although the policy at issue also covered vehicles registered and principally garaged in other states, the policy covered vehicles registered and principally garaged in Ohio, *Byer*, supra.

{¶26} Here, the record specifically demonstrates that the truck involved in the accident was principally garaged in Ohio, as evidence was heard that Barrera began and ended every route in Ohio. Additionally, evidence in the record demonstrated that Werner trucks drove 68,035,185 miles in Ohio in 2004; that Werner had 1,620 employees who resided in Ohio in 2004, out of its total of

13,722 employees; that 9,044 Werner trucks travelled at some point in Ohio in 2004; and, that Werner owned a trucking terminal in Ohio in 2004. Accordingly, we find the case sub judice to be distinguishable from *Humbert*, where the specific information regarding the principal garaging of the vehicle involved in the accident was unclear. Further, we find that the location of the risk is the most significant evidence of the parties' intent toward choice of law. Here, the location of the risk at issue, Barrera's truck as well as a significant number of other vehicles covered by the policy, was Ohio. Even further, we note that ICSP's inclusion in the policy of UM/UIM forms for every state is additional evidence of the parties' intent that the law of these various states would apply depending on the circumstances. See *Sarka*, 2004-Ohio-1911, at ¶21; *Garcia*, 2003-Ohio-3841, at ¶24; *Glover*, 2003-Ohio-1020, at ¶8. Finally, we note that, had ICSP intended for Nebraska law to apply, it could have simply designated the choice of Nebraska law in the policy. For these reasons, we find that the trial court erred in finding that Ohio did not have the most significant relationship to the transaction and the parties.

{¶27} Accordingly, we sustain Appellants' assignment of error on the choice of law issue.

{¶28} Having found error prejudicial to the Appellants herein, in the particulars assigned and argued regarding choice of law, we reverse the judgment

of the trial court on that basis and remand for further proceedings consistent with this opinion.

*Judgment Reversed and
Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**