[Cite as *Ray v. Warren*, 2019-Ohio-4654.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| LAMANA RAY, ADMINISTRATOR OF THE ESTATE OF DAYLAN RAY, DECEASED, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | **CASE NO. 2019-T-0006** |
| - vs - | : | |
| CITY OF WARREN, | : | |
| | : | |
| Defendant, | : | |
| TRUMBULL COUNTY BOARD OF COMMISSIONERS, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2017 CV 00661.

Judgment: Affirmed.

*Willard E. Bartel*, and *James D. Falvey,* Miller, Stillman & Bartel, 1320 Sumner Avenue, 1st Floor, Cleveland, Ohio 44115 (For Plaintiffs-Appellants).

*John T. McLandrich* and *Frank H. Scialdone*, Mazanec, Raskkin & Ryder Co., L.P.A, 100 Franklin's Row, 34305 Solon Road, Cleveland, Ohio 44139 (For Defendant-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1}  Appellants, the administrators of the Estates of Daylan Ray, Kirklan Behner, Andrique Bennett, Ramone White, and Brandon Murray, appeal the trial court's summary

judgment decision in favor of appellee, Trumbull County Board of Commissioners. We affirm.

{¶2} This case arises from a one-vehicle traffic accident. Eight teenagers were traveling 60 mph southbound in a 1998 Honda Passport on Niles-Warren River Road when the driver lost control, veered left, crossed over the northbound lane, went onto the east berm of the road, and hit the east guardrail causing the vehicle to catapult into the air and land upside down in a nearby retention pond.

{¶3} Two of the eight teenagers escaped and survived. The remaining six drowned inside the vehicle.

{¶4} Niles-Warren River Road, also known as County Road 69, is a continuation of Pine Street, a thoroughfare lying entirely in the City of Warren.

{¶5} Prior to 1974, all of Niles-Warren River Road was a county road. However, that year, the City of Warren annexed 27.93 acres from Howland Township including the northbound lane and the land to the east including the guardrail.

{¶6} Fourteen years later, Trumbull County and the city entered into a maintenance agreement governing the annexed portion of Niles-Warren River Road where the accident occurred. It states:

{¶7} "Agreement made and entered into at Warren, Ohio, between the Trumbull County Engineer's Office (hereinafter called the 'county'), and the city of Warren (hereinafter called the 'city').

{¶8} "In an effort to resolve maintenance items, such as resurfacing, pothole patching, ice control, traffic signal maintenance, etc., involving roadways that are continually in and out of the county and city jurisdictions, and in an effort to perform these

2

items by both parties, in an efficient manner, the County and the City hereby agree to the conditions and responsibilities on the following items and roadways:

{¶9} "* * *

{¶10} "(a) County Responsibility – To sweep, paint stripe, pothole patch, ice and snow control and generally maintain in total this roadway south of the city's southern most corporation limit.

{¶11} "Except for the portion of guardrail within Trumbull County that is within the 1800 to 2000 block on the west side only.

{¶12} "(b) City Responsibility – To sweep, paint stripe, pothole patch, ice and snow control and generally maintain in total this roadway, north of the city's southern most corporation limit."

{¶13} While Trumbull County is responsible for maintaining the west guardrail, the city is responsible for the remainder of the roadway including the east guardrail. This agreement remained in effect when the accident occurred.

{¶14} In the days following the accident, two Ohio State Highway Patrol troopers investigated the accident. The Highway Patrol ultimately concluded that the vehicle was traveling on Niles-Warren River Road, also known as County Road 69, when the accident occurred and that "the first harmful event in the crash took place with the guardrail, which is within the city limits of Warren."

{¶15} After dismissing their original case against Trumbull County and the City of Warren, the estates of five of the six deceased victims filed the underlying wrongful death case in April 2017. Joining the estates as plaintiffs were members of the victims' respective families. In addition to wrongful death, the complaint sets forth claims

3

sounding in survivorship and loss of consortium. The complaint alleges that Trumbull County and the city acted negligently, recklessly, or wantonly in maintaining the guardrail located on the east side of the roadway and that the victims would not have died if a proper guardrail had been in place.

{¶16} Appellants settled with the city and dismissed their claims against it.

{¶17} Trumbull County moved for summary judgment on all claims asserting there is no dispute the accident occurred on the northbound lane of Niles-Warren River Road and land to the east of the roadway, owned by the City of Warren as a result of the annexation. Thus, the city was solely responsible for the maintenance of the east guardrail. Alternatively, Trumbull County argued that pursuant to the maintenance agreement, the city agreed to maintain the entire roadway including the east guardrail.

{¶18} In response, appellants rely on a statement by one of the troopers that the accident took place on a section widely known as County Road 69 and argue there is a factual dispute concerning whether Niles-Warren River Road is a county road or a city street.

{¶19} In granting summary judgment for Trumbull County, the trial court found no dispute that the proximate cause of injury and death was the failure to properly maintain the east guardrail and that the duty to maintain the guardrail lies solely with the city.

{¶20} Appellant asserts four assignments of error:

{¶21} "[1.] The trial court erred by failing to consider whether the road in question was a boundary road under R.C. 5579.03, and if so, whether both lanes of the boundary road are County Road 69, thereby triggering Trumbull County's statutory responsibility to maintain the guardrail in question.

4

{¶22} "[2.] The trial court erred by failing to consider whether the City of Warren's 1974 annexation of land contained an admission by the Trumbull County Planning Commission that Trumbull County would retain the responsibility to maintain the road in question after the annexation.

{¶23} "[3.] The trial court erred by ruling, contrary to binding Ohio Supreme Court case law, that a county can relieve itself of a statutory responsibility by entering into a maintenance agreement with another political subdivision.

{¶24} "[4.] The trial court erred by ruling, contrary to binding Ohio Supreme Court case law, that a county is not responsible for maintaining portions of a county road that falls inside a city's limit."

{¶25} "'Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try.' *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, ¶ 12 (11th Dist.), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Summary judgment is proper when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C)." *Sabino v. Liberty Health Care Ctr.*, 11th Dist. Trumbull No. 2018-T-0059, 2019-Ohio-1302, ¶ 20.

{¶26} We review a summary judgment decision de novo without deference to the trial court's decision. *Byer v. Wright*, 160 Ohio App.3d 472, 2005-Ohio-1797, 827 N.E.2d 835, ¶ 11.

5

{¶27} The foundation of the trial court's analysis is its conclusion that there is no factual dispute regarding the location of the east-side guardrail: i.e., as a consequence of the 1974 annexation, that guardrail lies within the territorial limits of the City of Warren. At the trial level, appellants did not challenge this specific point. Instead, they asserted that notwithstanding the guardrail's location, there is a factual issue as to whether Niles-Warren River Road is a county road for maintenance purposes. Appellants concede that that the determination of whether Niles-Warren River Road should be classified as a "county" road does not involve the resolution of a factual dispute. Rather, they now assert that as a matter of law the annexation of the land had no effect upon Trumbull County's continuing legal responsibility to maintain the roadway and the east-side guardrail.

{¶28} Under their first assignment, appellants argue the trial court erred in not considering whether Niles-Warren River Road is a "boundary" road under R.C. 5579.03. They contend that since the roadway is the boundary between the city and Howland Township, Trumbull County was obligated to follow the statutory procedure for determining which political entity is responsible for maintaining the roadway. They further contend that by entering into the 1988 maintenance agreement with the city, Trumbull County did not comply with R.C. 5579,03 but expressly agreed to be responsible for maintaining the relevant area of the road.

{¶29} The Ohio Revised Code provides for classification and maintenance of roads throughout the state. Public highways are classified into one of three categories: state roads, county roads, and township roads. R.C. 5535.01. County roads include "all roads which are or may be established as a part of the county system of roads as provided in sections 5541.01 to 5541.03, inclusive, of the Revised Code, which shall be known as

6

the county highway system. Such roads shall be maintained by the board of county commissioners." R.C. 5535.01(B).

{¶30} Consistent with the prior sentence, R.C. 5535.08(A) provides: "The state, county, and township shall each maintain its roads, as designated in section 5535.01 of the Revised Code * * *." However, that statute also authorizes reassigning road maintenance duties: "[A]ny political subdivision having authority to construct, reconstruct, resurface, improve, repair, and maintain roads or streets may enter into an agreement, under terms agreeable to all parties, with any other political subdivision having that authority to obtain or provide road or street construction, reconstruction, resurfacing, improvement, repair, or maintenance services." R.C. 5535.08(C)(1).

{¶31} A separate statutory scheme exists in regard to streets within a municipal corporation. As to the maintenance of city streets, R.C. 723.01 states:

{¶32} "Municipal corporations shall have special powers to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation. The liability or immunity from liability of a municipal corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code."

{¶33} Taken as a whole, the foregoing readily establishes that a county or a city has a legal duty to adequately maintain any street or highway that lies within its system of roads. This general rule is consistent with Ohio case law relating to this issue. In

*Village of Peninsula v. Summit County*, 27 Ohio App.3d 252, 500 N.E.2d 884 (9th Dist.1985), the issue before the appellate court concerned the proper characterization of a public highway which began its existence as a county road, but was later incorporated into a municipality. Citing *Steubenville v. King*, 23 Ohio St. 610 (1873), paragraph two of the syllabus, the appellate court concluded that the highway lost its "character" as a county road when it became located within the municipality. *Id*. at 253-254. Because the highway immediately became a municipal street, the municipality was responsible for its repair and maintenance. *Id*. at 254.

{¶34} A similar result was reached in *Sanders v. Butler County Commissioners*, 12th Dist. Butler No. CA2000-02-033, 2000 WL 1145469 (Aug. 14, 2000). In *Sanders*, the issue was the proper application of R.C. 5591.36, which imposes a duty upon boards of county commissioners to erect and maintain guardrails in all appropriate places associated with all public highways, except state highways. After construing R.C. 5591.36 in conjunction with R.C. 723.01, *Sanders* held that the commissioners' duty to erect and maintain guardrails does not extend to roads located within the geographic boundaries of a municipality. *Id*. at * 3. Instead, under R.C. 723.01, that duty lies solely with the municipality as part of its statutory duty to "care" for the roads within its jurisdiction. *Id*. *See, also, Rocco v. City of Fairview Park*, 8th Dist. Cuyahoga No. 72263, 1998 WL 57085 (Feb. 12, 1998).

{¶35} Through annexation, the east-side guardrail is within the city's territorial limits, and therefore Trumbull County was not responsible for the guardrail's maintenance. In opposition, appellants rely on R.C. 5579.03, which provides:

{¶36} "If a road is established as a part of the line or boundary of a township or

8

municipal corporation, the board of township trustees of such adjoining townships and legislative authority of such municipal corporation, shall meet at a convenient place as soon after the first Monday of March as convenient, and apportion such road between the townships, or township and municipal corporation, as justice and equity require. The boards of the respective townships and legislative authority of the municipal corporation shall cause the road to be opened and improved accordingly, and shall thereafter cause their respective portions to be worked and kept in proper repair."

{¶37} R.C. 5579.03 applies to roads with a boundary line between two townships or townships and municipal corporations and does not govern county roads or boards of commissioners. As a result, the statute does not apply. Moreover, even if R.C. 5579.03 did apply, appellants' contention that the 1988 maintenance agreement requires Trumbull County to maintain the entire roadway and the east-side guardrail is misplaced. The maintenance agreement only places the burden of maintaining the west-side guardrail on Trumbull County. The remainder of the burden falls on the City of Warren.

{¶38} The City of Warren had the duty to maintain those parts of Niles-Warren River Road located within its territorial limits including the east guardrail. Thus, appellants' first assignment lacks merit.

{¶39} Appellants' fourth assignment asserts that *Village of Peninsula* and *Sanders* conflicts with *Lewis v. Laylin*, 46 Ohio St. 663, 23 N.E. 288 (1889).

{¶40} *Lewis* involves whether the board of county commissioners has the authority to collect a turnpike tax for improving a highway that goes through a municipality. As part of its analysis, *Lewis* considered whether the county commissioners have the underlying authority to make improvements to a state or county road that is within a

9

municipality:

{¶41} "That a state or county road is not extinguished by becoming a street of a municipal corporation is clear. It retains its character of a state or county road even as to such portions of it as may chance to fall within the limits of a municipal corporation that may be subsequently organized; nor is this character changed because the municipal authorities call it a street, and give it a name as such, and are invested by the law with its general control." *Id.* at 671-672.

{¶42} In reaching its conclusion that a highway loses its "character" as a county road when a municipality is created around it, the Ninth District in *Village of Peninsula* did not cite *Lewis*. Instead, it relied on the Supreme Court's earlier decision in *City of Steubenville v. King*, 23 Ohio St. 610 (1873). Although *King* appears to conflict with *Lewis*, the *King* holding that a highway loses its character as a county road and becomes a municipal street when annexed by the city has not been overruled by the Supreme Court. Moreover, like the facts here, *King* involves city annexation of a roadway. Therefore, both *King* and our case are readily distinguishable from *Lewis*, involving the collection of a turnpike tax for the improvement of the road.

{¶43} More importantly, even if the Ninth District's reliance upon *King* is misplaced in light of *Lewis*, the Twelfth District's decision in *Sanders* does not rely upon *King*, but instead is based entirely upon its application of two statutes, R.C. 5591.36 and R.C. 723.01, enacted well after *Lewis*. Since those statutes govern when *Sanders* was decided, *Lewis* is not binding. *See Hood v. Rose,* 153 Ohio App.3d 199, 2003-Ohio-3268, 792 N.E.2d 736, ¶ 20. Accordingly, *Sanders* is persuasive. The statutory duty of county commissioners to erect and maintain guardrails does not extend to municipal streets.

10

Appellants' fourth assignment is not well taken.

{¶44} Under their second assignment, appellants note that as part of the annexation process in 1974, the director of the Trumbull County Planning Commission sent a letter to the Board of County Commissioners stating that maintenance of the subject road would remain the responsibility of either Trumbull County or Howland Township. Appellants assert that the director's statement constitutes an admission by Trumbull County of its continuing duty to maintain Niles-Warren River Road and that the trial court should have considered it in making its final determination.

{¶45} However, appellants do not explain how a statement by a planning commission director is binding for purposes of determining a question of law. The determination of which political entity is responsible for maintaining the road and guardrails after annexation is a function of the governing statutory provisions and case law, as previously discussed. The director's statement is therefore irrelevant.

{¶46} Appellants also argue that there is no documentation from annexation stating that the city was accepting responsibility for maintaining the road. Citing R.C. 709.033(A)(6), they emphasize that before a board of county commissioners can approve a petition for annexation, it must determine whether the division of a road between a township and a municipality will create a road maintenance problem and, if so, whether the municipality has agreed, as a condition of the annexation, to assume responsibility for the condition of the road.

{¶47} R.C. 709.033(A)(6) shows that the statute imposes duties upon a board of county commissioners regarding its consideration of a petition for annexation. However, none of the duties listed in that statute pertain to a county's duty to maintain roads. That

11

duty is governed by R.C. 5535.01, 5535.08, and the cited case law. Since appellants have failed to establish that the county was responsible for maintaining the area of the road where the accident occurred, their second assignment is without merit.

{¶48} Under their third assignment, appellants contend that the trial court erred in relying on the maintenance agreement in concluding that the county has no liability.

{¶49} R.C. 5535.08(C)(1) governs and expressly authorizes political subdivisions, including cities and counties to agree as to duties to maintain roadways.

{¶50} Per its agreement, the city had the duty to maintain the guardrail and necessarily, the liability for failure to do so. The cited cases holding to the contrary do not apply the foregoing statutes and are, therefore, not controlling or persuasive. Appellants' third assignment lacks merit.

{¶51} The judgment of the Trumbull County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.